IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 09-245 |
| PHILLIP PARROTT | : | |

SURRICK, J.                                                                                                                                     MARCH  4  , 2010

**MEMORANDUM**

Presently before the Court is Defendant's Motion for Judgment of Acquittal and/or a New Trial. (Doc. No. 51.) For the following reasons, Defendant's Motion will be denied.

**I. PROCEDURAL BACKGROUND**

On April 14, 2009, a grand jury indicted Defendant, Phillip Parrott, on a single count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. No. 10.) A suppression hearing was held on October 26, 2009. Defendant sought to suppress evidence of the shotgun that was seized at the time of his arrest. (Doc. No. 23.) The only witness to testify at the hearing was Philadelphia Police Officer Janeen Jones. Defendant's motion to suppress was denied. (Doc. No. 41.)[1] On November 24, 2009, following a jury trial, Defendant was found guilty. Defendant now moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29 or, in the alternative, a new trial under Rule 33. (Doc. No. 51.)

**II. FACTUAL BACKGROUND**

In the early morning hours of November 30, 2008, Officer Jones and her partner, Officer Louis Pacell, were on patrol in a marked police car. At approximately 1:30 a.m., they received a call over the police radio about an individual with a gun in the 3600 block of North Bouvier

---

[1] *See United States v. Parrott*, No. 09-245, 2009 WL 4043292 (E.D. Pa. Nov. 20, 2009).

Street in Philadelphia. While en route to that location, they received a radio call that shots had been fired in that vicinity. After turning onto the 3600 block of North Bouvier Street, Officer Jones saw Defendant standing in front of the last house in the block at the corner of Bouvier and Pacific Streets. Defendant was visible in the light from nearby streetlights, and Officer Jones saw that he was holding a long dark object. As the officers approached Defendant, they realized that he was holding a sawed-off shotgun. Officer Pacell, who was driving, stopped the car about 20 to 30 feet from Defendant. Both officers exited the car with their weapons drawn and ordered Defendant to drop the shotgun. Defendant instead ran into the house that he had been standing in front of.

Concerned that they might be ambushed, Officers Jones and Pacell did not follow Defendant inside. Instead, they set up a perimeter around the house to ensure that Defendant did not flee, and they waited for backup. Shortly thereafter, a woman leaned out of a window of the house, asking about the commotion. The officers asked her to open the front door and asked her about the man with the gun. At first, the woman denied that anyone had entered the house. She then said that the man had run out the back door. The officers had not seen anyone exit the rear of the house. As more officers arrived on the scene, the woman opened the front door and she and several other people came out. Defendant was not one of them. None of the people who exited the house had the shotgun. The woman told Officer Jones that nobody remained in the house.

Soon thereafter, Defendant appeared at the top of the internal staircase, which was visible to the officers through the front door. He pretended that he had just awakened and asked what was going on. As he came down the stairs, Officer Jones recognized him as the man that she had

seen with the gun. Defendant was arrested.

At this point, Officer Jones, along with other officers, entered the house for the purpose of securing it. The police were unsure about the nature of the situation: they did not know whether there had been a home invasion, whether there was anyone injured in the house, or whether another person with the shotgun remained in the house. They also had a number of concerns based on their observations of Defendant and his actions, the report of shots having been fired at this location, and the fact that the gun was still inside the house. Their concerns were heightened by the false statements made by the woman that nobody had entered the house, that the gunman had run out the back, and that nobody remained inside after she had come outside with the others.

Once inside the house, the other officers went to the second floor and Officer Jones cleared the first floor, making sure that there was noone there either hurt or hiding. She then proceeded to the basement. While clearing the basement, Officer Jones came upon the shotgun that she had seen Defendant holding outside the house.[2]

## III. LEGAL STANDARDS

### A. Rule 29 Motion for Acquittal

"A defendant challenging the sufficiency of the evidence bears a heavy burden." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992) (citing *United States v. Vastola*, 899 F.2d 211, 226 (3d Cir. 1990)). In considering a motion for judgment of acquittal under Rule 29, the trial court must "review the record in the light most favorable to the prosecution to determine whether

---

[2] In the Memorandum and Order denying Defendant's motion to suppress, we determined that Officer Jones's actions did not violate the Fourth Amendment. *Parrott*, 2009 WL 4043292, at *7.

any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citations and internal quotation marks omitted). The court cannot "usurp the role of the jury," *id.*, and must presume "that the jury properly evaluated the credibility of witnesses, found the facts, and drew rational inferences" from the evidence. *United States v. Menon*, 24 F.3d 550, 564 (3d Cir. 1994); *see also United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987) (setting forth the standard for a post-verdict judgment of acquittal). A finding of insufficiency of the evidence should "be confined to cases where the prosecution's failure is clear." *Brodie*, 403 F.3d at 133 (quoting *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002)). The jury verdict will be upheld unless the court concludes that no rational jury "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### B.  Rule 33 Motion for a New Trial

Under Federal Rule of Criminal Procedure 33, the trial court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). On a Rule 33 motion, "[t]he court may weigh the evidence, but may set aside the verdict and grant a new trial only if it determines that the verdict constitutes a miscarriage of justice, or if it determines that an error at trial had a substantial influence on the verdict." *United States v. Enigwe*, No. 92-00257, 1992 WL 382325, at *4 (E.D. Pa. Dec. 9, 1992) (citations omitted), *aff'd*, 26 F.3d 124 (3d Cir. 1994). A new trial is required on the basis of evidentiary errors only when the "errors, when combined, so infected the jury's deliberation that they had a substantial influence on the outcome of the trial." *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993). In view of this strict standard, motions under Rule 33 "are to be granted sparingly and only in exceptional cases."

4

*Government of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987).

IV.     **DISCUSSION**

     A.     **The Evidence Was Sufficient to Support Defendant's Conviction**

A jury found Defendant guilty of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). To prove Defendant's violation of § 922(g)(1), the Government had to establish the following elements beyond a reasonable doubt: (1) that Defendant had been convicted of a crime punishable by more than one year of imprisonment; (2) that Defendant knowingly possessed a firearm; and (3) that the firearm had passed in interstate commerce. *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000). At trial, the parties stipulated to Defendant's prior felony conviction. (Trial Tr. vol. 2, 22, Nov. 23, 2009.) Hence, the jury needed only to determine whether the Government carried its burden on the elements of possession and the interstate commerce nexus. An expert witness presented by the Government testified that Defendant's shotgun had traveled in interstate commerce, having been manufactured in Connecticut before being recovered in Pennsylvania. (*Id.* at 14-18.) Defendant does not challenge the adequacy of the expert's testimony. Defendant's argument goes solely to the second requirement under § 922(g)(1)—whether the Government's evidence established that Defendant knowingly possessed a firearm at approximately 1:30 a.m. on November 30, 2008.

Defendant's Memorandum of Law contains one single sentence in support of his insufficiency of the evidence argument. That sentence states: "The contradictory, unreliable and irreconcilable nature of the testimony presented by the government through Officers Jones and Pacell are [sic] insufficient for any reasonable jury to render a guilty verdict." (Doc. No. 51 at 4.) We find Defendant's argument insufficient. Defendant's Memorandum makes no citations to the

trial record and contains no references to any portion of the testimony of Officer Jones or Officer Pacell.  Defendant provides no support for his conclusory statement.  Defendant's characterization of the evidence presented at trial as "insufficient, contradictory, and irreconcilable" (*id.* at 1) and his suggestion that a judgment of acquittal is appropriate because "Officer Pacell's testimony directly contradicted the testimony of Officer Janeen Jones concerning the events leading up to, and including, the search, seizure and the arrest of Phillip Parrott" (*id.* at 2) are without merit.

Officers Jones and Pacell both testified that they saw Defendant holding a sawed-off shotgun in the 3600 block of North Bouvier Street when they arrived there in the early morning hours of November 30, 2008, in response to a radio call on their police radio.  (Trial Tr. vol. 1, 19, 27, 99-101, 105 Nov. 23, 2009.)  Both officers testified that when ordered to drop the gun, Defendant ran inside the house that he had been standing in front of.  (*Id.* at 28, 31, 106-07.) Both testified that the shotgun recovered from inside the house and introduced at trial as Government's Exhibit 1 was the same shotgun that they saw Defendant holding when he ran inside the house.  (*Id.* at 29-30, 100-101.)

To the extent that Defendant challenges the credibility of Jones's or Pacell's testimony, we note that "[c]redibility determinations are the unique province of a fact finder"—in this case, the jury.  *United States v. Kole*, 164 F.3d 164, 177 (3d Cir.1998).  As is the case in any trial, there were some inconsistencies between the testimony of Officer Jones and Officer Pacell.  However, those discrepancies were minor and inconsequential.  The jury reached its conclusion after hearing defense counsel's cross-examination of both officers.  The jury heard defense counsel specifically cross-examine Officer Pacell with respect to particular aspects of Officer Jones's

testimony. (*See, e.g.*, Trial Tr. vol. 1, 131-34, Nov. 23, 2009.) The jury was given the standard jury instruction on the credibility of witnesses and on dealing with the inconsistent testimony of witnesses. (Trial Tr. Nov. 24, 2009, 7-10.) Obviously, the jury concluded that any inconsistencies in the testimony of the officers did not alter the basic fact at issue. The jury determined that Defendant knowingly possessed a firearm. The jury's conclusion was perfectly reasonable. In fact, considering all of the evidence, any other conclusion would have been unreasonable. Both officers testified that they saw Defendant holding a sawed-off shotgun while standing in front of 3631 North Bouvier Street at approximately 1:30 a.m. on November 30, 2008. Defendant's motion under Rule 29 based upon the insufficiency of the evidence must be denied.

    **B.  Defendant Has Presented No Basis for a New Trial**

    Defendant's request for a new trial is rooted in our denial of his motion to suppress the shotgun that was introduced at trial. (*See* Doc. No. 51 at 5.) At the conclusion of the Government's case-in-chief, defense counsel orally requested that the Court reconsider its denial of Defendant's motion to suppress. We denied the request. (Trial Tr. vol. 1, 143, Nov. 23, 2009.) Defendant again seeks reconsideration of our denial of the motion to suppress, arguing that Officer Pacell's trial testimony constituted "newly discovered evidence" that would have "influenced the Court's decision regarding suppression of the firearm." (Doc. No 51 at 8.)

    A court may grant a new trial under Rule 33 based on the discovery of new evidence if all the following conditions are satisfied:

> (a) the evidence must be, in fact, newly discovered, i.e., discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) evidence relied on must not

> be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Jasin*, 280 F.3d 355, 361 (3d Cir. 2002) (quoting *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir.1976)) (alterations omitted). Defendant contends that Officer Pacell's trial testimony was new evidence and that if that evidence had been presented at the suppression hearing, the result would have been different. (Doc. No. 51 at 5, 8.) Defendant is simply wrong.

Initially, we note that Defendant's argument concerning newly discovered evidence suffers from the same flaw as his insufficiency of the evidence argument. Defendant does not identify specifically which evidence is newly discovered. He simply repeats that Officer Pacell's testimony was contradictory to or incompatible with the testimony of Officer Jones (*see id.* at 2, 6, 7).

In any event, Officer's Pacell's testimony is not "newly discovered evidence." On July 14, 2009, over four months before the suppression hearing, the Government provided Defendant with various discovery materials, including an arrest report and a complaint. (Doc. No. 52 Ex. 1.) Both of these documents listed Officer Jones and Officer Pacell as the responding officers and both briefly outlined the facts surrounding the incident. (*Id.*) Clearly, Defendant had ample notice from the Government regarding Officer Pacell's involvement in his arrest. Defendant's characterization of Officer Pacell's involvement as newly discovered is simply inaccurate. Defendant also suggests that neither he nor his counsel "should have known that an additional officer was present at the scene of the alleged offenses and would give significantly contradictory testimony, when there is no mention of this officers [sic] proposed testimony in any of the police

8

reports and other documents provided by the government in the discovery process." (Doc. No. 51 at 6.) Defendant certainly knew that Officer Pacell was present at the scene. Both Officer Pacell and Officer Jones exited their marked police vehicle with guns drawn and ordered Defendant to drop the shotgun. Defendant looked at them and ran into 3631 North Bouvier Street. When Defendant exited the house at 3631 North Bouvier, Officer Pacell was there.[3] If, for some reason, Defendant had no recollection of the events of that fateful morning, he certainly *should have* known that Officer Pacell was present at the scene based upon the discovery materials provided by the Government. There is no indication that Defendant subpoenaed or attempted to speak to Officer Pacell prior to the suppression hearing or the trial. "[E]vidence is not 'newly discovered' when it was known or could have been known by the diligence of the defendant or his counsel." *Jasin*, 280 F.3d at 362 (quoting *United States v. Bujese*, 371 F.2d 120, 125 (3d Cir. 1967)); *cf. United States v. White*, 514 F.2d 205, 207-08 (D.C. Cir. 1975) (applying same standard as that set forth in *Jasin* and noting that "[i]t would have been a simple matter to subpoena the police officers who participated in the search and have them testify at the first suppression hearing.")

Although Defendant has provided no references to exact testimony by Officer Pacell that he claims is newly discovered, his argument that Officer Pacell's testimony contradicted and was irreconcilable with the testimony of Officer Jones suggests that it was impeaching in nature. If that is Defendant's contention, it runs counter to the *Jasin* requirement that newly discovered evidence cannot be "merely cumulative or impeaching." *Jasin*, 280 F.3d at 361. However, while

---

[3] Officer Pacell testified that he, in fact, handcuffed Defendant and put him in a police car.

"it may be advisable for a district court to analyze each prong of the [*Jasin*] test after finding that one factor has not been met, such an analysis of the remaining factors is not required inasmuch as the failure of one element is a sufficient basis to deny a motion for a new trial." *Id.* at 365.

Having presided over Defendant's suppression hearing and his trial, we are in a position to assess whether the evidence that Defendant asserts is newly discovered is of such nature that it would probably produce an acquittal at a new trial. We heard Officer Jones's testimony at both the suppression hearing and the trial and Officer Pacell's testimony at the trial. We are satisfied that if Officer Pacell had testified at the suppression hearing, the result would have been the same.

There is no newly discovered evidence here that would have affected the outcome of the suppression hearing. Neither our denial of that motion nor the jury's verdict at trial constituted a miscarriage of justice. Defendant's request for a new trial must be denied.

## V.  CONCLUSION

For all of the reasons set forth above, Defendant's Motion for Judgment of Acquittal and/or a New Trial will be denied.

An appropriate Order follows.

BY THE COURT:

_____
R. Barclay Surrick, J.